IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

GTSI CORP.,                    )
                               )
     Plaintiff,                )
                               )
          v.                   )     1:09cv123 (JCC)
                               )
WILDFLOWER INT'L, INC.,        )
                               )
     Defendant.                )

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendant
Wildflower International, Inc.'s motion to dismiss.  Also before
the Court is each party's motion to seal certain documents
relevant to the Complaint.  For the following reasons, the Court
will deny the motion to dismiss and grant the motions to seal.

### **I. Background**

This case arises out of an alleged instance of
corporate espionage.  Plaintiff GTSI Corp. ("GTSI") filed a
complaint (the "Complaint") claiming that Defendant Wildflower
International, Inc. ("Wildflower") improperly came into
possession of trade secret information related to GTSI's pursuit
of a contract with the United States Department of Homeland
Security ("DHS").  The allegations in the Complaint are as
follows.

In preparation for a confidential bid responding to a "Request for Proposal" from the DHS, GTSI entered into a "Teaming Agreement" (the "Teaming Agreement") with Dell Marketing L.P. and Dell Federal Systems, L.P. (collectively, "Dell"). Compl. at ¶ 5. The Teaming Agreement memorialized the "terms, strategies, services, and pricing" negotiated between Dell and GTSI in preparation for the bid. *Id.* The non-public Teaming Agreement "and its terms" were part of GTSI's confidential and proprietary proposal. *Id.* at ¶ 6. The Teaming Agreement provides that its contents are confidential and that "all information regarding strategy, preferred pricing and product information [is] confidential and proprietary." *Id.* at ¶ 7. Dell and GTSI agreed to protect the confidentiality of the Teaming Agreement and prevent its disclosure to third parties. *Id.*

To that end, a limited number of senior officials from each company negotiated the Teaming Agreement. All of the GTSI employees who knew about or could access the Teaming Agreement were, as a condition of their employment, subject to written confidentiality and non-disclosure agreements. *Id.* at ¶ 8.

Wildflower submitted a competing bid for the DHS contract. *Id.* at ¶ 9. The government awarded the contract to MultimaxArray FirstSource, with GTSI as a subcontractor. *Id.* at ¶ 10. Wildflower then filed a Small Business Administration ("SBA") "size protest" with the DHS and the SBA, contesting the

contract award.  *Id.* at ¶ 11.  As part of its protest, Wildflower provided a copy of the Teaming Agreement to the SBA and the DHS. It quoted the terms of the Teaming Agreement extensively in its SBA size protest.[1]  *Id.* at ¶ 12-13.

The size protest put GTSI on notice that its Teaming Agreement with Dell had been leaked.  *Id.* at ¶ 15.  GTSI then conducted an internal investigation to determine the source of the leak.  The investigation proved unsuccessful.  *Id.* at ¶ 16. GTSI also contacted Dell, which told GTSI that it was not the source of the Teaming Agreement that ended up in Wildflower's hands.  *Id.* at 17.  After two letters that GTSI sent to Wildflower, asking the company to disclose the source of the document and to return any non-public GTSI material, proved unsuccessful, GTSI filed this suit.  *Id.* at ¶¶ 18-19.  GTSI alleges, "on information and belief," that Wildflower "willfully and wantonly misappropriated the Teaming Agreement and other confidential proprietary information from GTSI."  *Id.* at ¶ 20; *see also id.* at ¶ 27.

The Complaint contains a single count: violation of the Virginia Uniform Trade Secrets Act, Va. Code Ann. § 59.1-336 *et seq.* (the "VUTSA").  GTSI claims that the Teaming Agreement,

---

[1] The Complaint does not state the outcome of the size protest. Wildflower has asserted that Multimax and GTSI chose not to contest the protest, resulting in the government's termination of the $165 million contract.  Def.'s Mem. in Supp. at 3; *see also id.* at 12.

besides being proprietary and confidential, contains "'trade secret' information" under the VUTSA. *Id.* at ¶ 22.  The Teaming Agreement contains trade secrets, GTSI explains, because it "is a compilation of strategies and information regarding IT products and pricing specifically tailored for the competitive advantage of GTSI and Dell in seeking contracts with the [DHS]." *Id.*  GTSI also asserts that Wildflower used the Agreement to make "false, misleading and damaging accusations against GTSI for the purposes of damaging GTSI as a future competitor." *Id.* at ¶ 24.

The Complaint contains alternative claims accusing Wildflower of improperly acquiring the Agreement, both stated "[o]n information and belief": Wildflower either obtained the Agreement, "and possibly other GTSI proprietary documents," through "willful and wanton misappropriation" from a GTSI employee in Virginia, or it did so through "willful and wanton misappropriation from GTSI's premises or electronic document systems in Virginia." *Id.* at ¶¶ 27-28.

GTSI claims that Wildflower's actions damaged it. *Id.* at ¶ 29.  In recompense, it asks the Court to (1) compel Wildflower to disclose its source for the document; (2) compel Wildflower to return all copies of the Agreement and any other proprietary material; (3) enjoin Wildflower from further using or disclosing the Agreement and any other proprietary GTSI information it possesses; (4) award actual and compensatory

4

damages; (5) award punitive damages of $350,000 pursuant to Va. Code Ann. § 59.1-338; and (6) award attorney's fees and costs under the same statute.

Wildflower moved to dismiss the Complaint on March 2, 2009.  GTSI opposed the motion on March 13, and Wildflower filed a reply memorandum on March 20.  Also before the Court are two motions to seal.  Wildflower submitted, as part of its motion to dismiss, a copy of what it claims to be the Teaming Agreement at the center of this dispute.  It seeks a provisional order sealing the document, but asks that the Court unseal the document if it decides, as Wildflower urges, that the document contains neither proprietary information nor trade secrets.  GTSI attached to its opposition brief a copy of what it claims to be the full Teaming Agreement and a supporting affidavit, both of which it asks the Court to seal.  These motions are before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  A motion to dismiss must be assessed in light of Rule 8's liberal pleading

5

standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

### III. Analysis

Wildflower's arguments for dismissal depend largely on the definition of the "Teaming Agreement" referred to in the Complaint.  Wildflower submitted, along with its motion to dismiss, a copy of the document that it admits sending to the SBA.  It argues that, as a matter of law, that document contains no trade secrets.  It also contends that, even without reference to the document it submitted, the Court should dismiss GTSI's Complaint for failure to state a cause of action.  Finally, Wildflower claims that the facts averred in the Complaint do not establish diversity jurisdiction.  The Court will address each argument in turn.

A. <u>The Virginia Uniform Trade Secrets Act</u>

To establish a claim under the VUTSA, Va. Code Ann. §§ 59.1-336 to -343, a plaintiff must prove that (1) the information in question constitutes a trade secret, and (2) the defendant misappropriated it.  *MicroStrategy, Inc. v. Business*

*Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004).  The statute defines a "trade secret" as:

> [I]nformation, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>> 2. Is subject to efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code. Ann. § 59.1-336; *see also MicroStrategy, Inc.*, 331 F. Supp. 2d at 416 (explaining that, to constitute a trade secret, "information must be of a subject matter entitled to trade secret protection, must have independent economic value as a result of not being generally known and not being readily ascertainable by proper means; and reasonable efforts must have been taken to maintain its secrecy.").  Many classes of information can constitute a trade secret, including customer lists and sales techniques.  *MicroStrategy, Inc.*, 331 F. Supp. 2d at 416 (citation omitted).

The VUTSA defines "misappropriation" as the:

> 1. Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> 2. Disclosure or use of a trade secret of another without express or implied consent by a person who
>> (a) Used improper means to acquire knowledge of the trade secret; or
>> (b) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

(1) Derived from or through a person who had
utilized improper means to acquire it;
(2) Acquired under circumstances giving rise to a
duty to maintain its secrecy or limit its use;
(3) Derived from or through a person who owed a
duty to the person seeking relief to maintain
its secrecy or limit its use; or
(4) Acquired by accident or mistake.

Va. Code Ann. § 59.1-336; *see MicroStrategy, Inc.*, 331 F. Supp.

2d at 416.

B. Competing Versions of the "Teaming Agreement"

        Wildflower's main contention is that the "copy of the

Teaming Agreement" that GTSI alleges that Wildflower provided to

the SBA, which forms the basis of the VUTSA claim, does not, as a

matter of law, contain trade secrets.  Compl. at ¶ 11.  To

support this claim, Wildflower submitted a copy of the document

that it acknowledges having disclosed to the SBA as part of its

size protest (the "Basic Agreement").  Def.'s Mem. in Supp. at

Ex. A (filed under seal).  It claims that, because the Complaint

refers to what Wildflower submitted to the SBA as the "Teaming

Agreement," *see* Compl. at ¶¶ 11-12, the Basic Agreement

constitutes the entire "Teaming Agreement" referred to in the

Complaint and does not contain trade secrets as a matter of law.

        1. Whether the Court Can Consider the Basic Agreement

        GTSI complains that Wildflower's submission of the

Basic Agreement is improper given that, at the motion to dismiss

stage, the Court must assume the truth of all facts pled in the

Complaint.  Pl.'s Opp'n at 11-12.  The only question before the

8

Court, GTSI asserts, is whether it has properly pled a VUTSA violation by Wildflower.

That is correct as a general proposition, but it is well-settled that a court can examine a document "integral to and explicitly relied on in the complaint . . . [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (second alteration in original) (citation and internal quotation marks omitted); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts can examine such documents even at the motion to dismiss stage because the plaintiff "has relied upon these documents in framing the complaint." *Am. Chiropractic*, 367 F.3d at 234 (quotation omitted).

GTSI built its entire Complaint around the allegation that Wildflower misappropriated the Teaming Agreement, which is clearly integral to the Complaint. It based that allegation, at least in part, on the document that Wildflower submitted to the SBA. GTSI does not contest the authenticity of the exhibit that Wildflower purports to be a copy of the document that it sent to the SBA. *See* Compl. at ¶ 11. In fact, it agrees that this exhibit constitutes part of the Teaming Agreement – GTSI's own submission to the Court of what it claims to be the complete Teaming Agreement includes the whole of the Basic Agreement. The Court finds that it can consider Wildflower's exhibit without

converting the motion to dismiss into a motion for summary judgment. *See Am. Chiropractic*, 367 F.3d at 234.

    2. <u>GTSI's Submission of the Teaming Agreement</u>

    Before addressing Wildflower's argument based on the Basic Agreement and its purported lack of trade secrets, the Court must consider GTSI's sealed submission of a competing version of the Teaming Agreement (the "Full Agreement"). The Basic Agreement submitted by Wildflower is an eight-page legal document ending with the signatures of representatives from GTSI and Dell. The Full Agreement submitted by GTSI includes the Basic Agreement and voluminous attachments in the form of spreadsheets containing, among other entries, detailed pricing information. Pl.'s Opp'n at Ex. A.

    Some difficulty arises because each party calls the version of the Agreement that it submitted the "Teaming Agreement," the term used in the Complaint. One question central to resolving the instant motion is which party's submission the Court should consider to be the "Teaming Agreement" referred to in the Complaint. Whether the VUTSA claim was properly pled may hinge on the choice between the agreements, because the Full Agreement contains detailed pricing information absent from the Basic Agreement.

    Wildflower avers that the Basic Agreement is the same document that it submitted to the SBA with its size protest.

10

Def.'s Reply at 2.  GTSI does not challenge this assertion.
Paragraph 11 of the Complaint specifically states that "In the
[size] protest, Wildflower relied upon and provided DHS and the
SBA with a copy of the Teaming Agreement."  Wildflower urges
that, given the statement in ¶ 11, the "Teaming Agreement," as
that phrase is used in the Complaint, should be interpreted to
refer only to the Basic Agreement, because the only document it
gave the SBA was the Basic Agreement.

        Such an interpretation, however, would allow a factual
contention by Wildflower to control the definition that GTSI
employed in framing its Complaint.  The Complaint alleges that
the "Teaming Agreement" contains "information regarding strategy,
preferred pricing and product information."  Compl. at ¶ 7.  The
Full Agreement clearly contains some pricing and product
information; it is not clear that the Basic Agreement contains
such information.  At the outset, then, the definition of
"Teaming Agreement" that GTSI provides in its Complaint appears
to refer to the Full Agreement, not the Basic Agreement.
Additionally, because the Basic Agreement is part of the Full
Agreement, nothing about GTSI's statement that Wildflower "relied
upon" the Teaming Agreement and quoted extensively from its terms
in the size protest is contradicted by Wildflower's submission of
the Basic Agreement.  Compl. at ¶¶ 12-14.  Wildflower's argument
for equating the Basic Agreement with the "Teaming Agreement"

referred to in the Complaint depends almost wholly on the Complaint's statement that Wildflower "provided . . . the SBA with a copy of the Teaming Agreement."  Compl. at ¶ 11.

Based on its contention about what it submitted to the SBA, Wildflower argues that the Complaint's references to the "Teaming Agreement" signify the Basic Agreement.  This is, at heart, an argument based on a dispute of fact: by submitting to the Court a copy of what it claims to have given the SBA, Wildflower is saying that the Complaint incorrectly accuses it of providing the SBA with the Full Agreement.  In other words, Wildflower disagrees with the Complaint's statement that the document it gave to the SBA contained the pricing information and other spreadsheets that form part of the Full Agreement.  But that factual dispute is not relevant at the motion to dismiss stage, where the Court is focused on the allegations in the Complaint rather than whether the plaintiff will ultimately be able to prove those allegations.  Wildflower's factual disagreement with one statement in the Complaint cannot allow it to redefine the phrase "Teaming Agreement" used throughout the document.  Moreover, GTSI has represented to the Court that what it alleged Wildflower to have misappropriated is the Full Agreement.  Pl.'s Mot. to Seal Reply Mem. at 1-2.

In short, GTSI has alleged that Wildflower misappropriated the Full Agreement – a document that contains

12

purportedly secret pricing and product information – and then gave the Full Agreement to the SBA.  The question whether Wildflower actually gave the Full Agreement to the SBA does not affect the central allegation of misappropriation.  The ultimate factual accuracy of GTSI's allegations is not at issue at the motion to dismiss stage.  GTSI has not alleged that the information that Wildflower misappropriated is limited to whatever Wildflower gave the SBA.  Nor did it define "Teaming Agreement" by reference to what Wildflower gave the SBA.

Because the Court finds that GTSI has alleged that Wildflower misappropriated the Full Agreement, it will not at this time discuss Wildflower's argument that, as a matter of law, the Basic Agreement does not contain trade secrets.

C. <u>Failure to State a Claim</u>

Wildflower also argues that the Court should dismiss the Complaint for failure to state a claim under Rule 12(b)(6) even if it does not equate the Teaming Agreement with the Basic Agreement.

The Court finds that the Complaint sufficiently alleges a cause of action under the VUTSA.  First, GTSI alleges that the Agreement contains pricing, strategy, and other trade secret information that it took affirmative steps to protect.  Compl. at ¶¶ 7-8, 25-26; *see* Va. Code. Ann. § 59.1-336.  Detailed pricing information from an entity bidding on government contracts could

13

be used by "other persons who can obtain economic value from its disclosure or use" – for example, by giving the holder of the information a competitive advantage in bidding.  Va. Code Ann. § 59.1-336.  In this sense, the information may "[d]erive[] independent economic value . . . from not being generally known." *Id.*  Such pricing information may constitute a trade secret.  *See MicroStrategy, Inc.*, 331 F. Supp. 2d at 416.  Whether the information rises to the level of a trade secret is generally "a fact-intensive question to be resolved upon trial," not on a motion to dismiss.  *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 419 (4th Cir. 1999).

Additionally, GTSI claims to have taken appropriate steps to maintain the secrecy of its pricing information.  Compl. at ¶¶ 7-8, 26.  These allegations are sufficient at this stage to meet hte second requirement of the VUTSA's definition of "trade secret."  Va. Code Ann. § 59.1-336.  At this time, the Court cannot rule as a matter of law that the Teaming Agreement does not contain trade secrets.

The second inquiry in a trade secrets misappropriation case is whether the trade secrets were "misappropriated." *MicroStrategy, Inc.*, 331 F. Supp. 2d at 416.  The Complaint states, on information and belief, that Wildflower could only have gained access to the Agreement through some form of misappropriation.  Compl. at ¶¶ 15-17, 20, 27-28.  GTSI alleges

14

that Wildflower either misappropriated the trade secret itself or obtained a copy of it through its improper disclosure by a GTSI employee "whom Wildflower knew or should have known was not authorized to disclose it."  Compl. at ¶¶ 27-28.  It also alleges that Wildflower improperly used the Teaming Agreement to GTSI's detriment.  *Id.* at ¶¶ 23-24.  Given the definition of "misappropriation" in the VUTSA, these allegations are sufficient to state a claim for misappropriation pursuant to that Act.  *See* Va. Code Ann. § 59.1-336.

Wildflower attempts to rebut the "misappropriation" prong of GTSI's claim by drawing an analogy between this case and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  In *Twombly*, the Supreme Court held that a "conclusory allegation of agreement at some unidentified point" between putative competitors "[did] not supply facts adequate to show illegality."  550 U.S. at 556-57.  Likewise, Wildflower claims, GTSI's "conclusory allegation that Wildflower possesses the [A]greement does not supply facts adequate to show that it misappropriated that document."  Def.'s Mem. in Supp. at 11.

In *Twombly*, though, the court explained that allegations of parallel conduct in a Sherman Act claim could survive where they were "placed in a context that raises a suggestion of [an unlawful] agreement, not merely parallel conduct that could just as well be independent action."  550 U.S.

15

at 557.  Here, the context of GTSI's claim bespeaks its "plausibility" under the motion to dismiss standard elucidated in *Twombly*: the circumstances described in the Complaint raise a suggestion of unlawful activity.  While it is conceivable that two large corporations could independently and lawfully stumble into parallel action, Wildflower could not have independently created the document that GTSI alleges it misappropriated.  At this preliminary stage, the Court finds that GTSI has properly alleged "misappropriation."  Doing so on "information and belief" is not fatal to its claim.  *See Crago v. Capital Advantage Fin. & Dev., Inc.*, 242 F.R.D. 341, 344 n.3 (D.S.C. 2007).

Finally, GTSI claims that Wildflower's actions damaged it by allowing Wildflower and any other third parties to whom the Agreement was disclosed to undercut GTSI's bids and otherwise use the trade secret information to gain a competitive advantage; the Complaint also asserts that Wildflower used the Agreement to damage GTSI's reputation.  Compl. at ¶¶ 23-24.  At the motion to dismiss stage, these allegations suffice to counter Wildflower's suggestion that GTSI has not alleged any connection between the purported misappropriation and damage to GTSI.  Def.'s Mem. in Supp. at 11.

In summary, GTSI accuses Wildflower of (1) misappropriating (2) trade secrets and (3) using them to make "false, misleading and damaging accusations" in an attempt to

harm GTSI's business position as a competitor of Wildflower.
Taken together, and construed in favor of GTSI, these allegations
are sufficient to allege a violation of VUTSA under the notice
pleading standard of Rule 8.

    D. <u>Whether GTSI Alleged the Required Amount in Controversy</u>

        Wildflower also argues that the Complaint should be
dismissed because it does not allege an amount in controversy
over $75,000 and thus fails to meet the requirements of diversity
jurisdiction.[2]  Def.'s Mem. in Supp. at 12 (citing 28 U.S.C.
§ 1332).  Wildflower recognizes that GTSI requested $350,000 in
punitive damages under the statute.  *Id.* at 13.  But, because
GTSI did not claim a certain amount of *actual* damages and because
Virginia law allows the recovery of punitive damages only where
compensatory damages exist, *see Valley Acceptance Corp. v.
Glasby*, 230 Va. 422, 432, 337 S.E.2d 291, 297 (1985), Wildflower
claims that GTSI's pleading does not fulfill the "amount in
controversy" requirement of diversity jurisdiction.

        Wildflower's jurisdictional argument fails.  The
Complaint states that Wildflower used the Agreement "to make
false, misleading and damaging accusations against GTSI for
purposes of damaging GTSI as a future competitor for delivery of
IT services" and later alleges that "GTSI has been damaged by

---

    [2] Wildflower does not contest the other jurisdictional facts pled in the
Complaint: GTSI, a Delaware corporation, has its principal place of business
in Virginia; Wildflower is a New Mexico corporation.  Compl. at ¶ 2.

Wildflower's misappropriation of its trade secret." Compl. at ¶¶ 24, 29. While it does not name a specific dollar amount, the Complaint states that GTSI suffered damages and requests compensation for them. As part of the requested remedy for Wildflower's alleged misconduct, it also asks for punitive damages. Compl. at 6-7.

As Wildflower recognizes, Virginia law does not block punitive damages so long as compensatory damages exist. *Valley Acceptance Corp.*, 337 S.E.2d at 297. Here, GTSI has claimed that compensatory damages exist. Compl. at ¶¶ 24, 29. Thus, its punitive damages claim is potentially valid. Courts may consider punitive damages in determining the amount in controversy. *See* 15 James Wm. Moore et al., Moore's Federal Practice ¶ 102.106[4] (3d ed. 1999). The combination of GTSI's claim for compensatory damages and its claim for punitive damages alleges that more than $75,000 is in controversy, as required by 28 U.S.C. § 1332(a).

Moreover, a plaintiff's claim for actual and compensatory damages is not necessarily invalid because it fails to specify a certain amount. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1259 (3d ed. 2004) (stating that it is unclear that Rule 8 *requires* a definite statement). Generally, as long as the requisite sum is claimed by the plaintiff in good faith, a federal diversity case will not be dismissed for lack of jurisdiction on amount-in-controversy

grounds unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Reb Cab Co.*, 303 U.S. 283, 288-89 (1938). Here, GTSI has met its jurisdictional burden by showing that it does not appear to a legal certainty that its claim is for less than $75,000.  The Court will not dismiss the Complaint for lack of subject matter jurisdiction.

   E. Motions to Seal

      The Fourth Circuit has set out the steps that a district court must take before sealing a document.  *See Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 288 (4th Cir. 2000) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988); *In re the Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).  Under *Ashcraft*, an order to seal documents is valid when the district court (1) provides public notice and gives the public an opportunity to object to the sealing; (2) considers less drastic alternatives; and (3) provides specific findings in support of its decision to seal and its rejection of alternatives to sealing.  *Ashcraft*, 218 F.3d at 288.

      In its motion, GTSI asks the Court to seal the exhibit it submitted in opposition to the motion to dismiss, which includes the Full Agreement and an affidavit containing

19

information about the formation of the Full Agreement.[3] Wildflower's motion asks the Court to seal the Basic Agreement while its motion to dismiss is pending, but asks the Court to lift the seal should it decide that the Basic Agreement does not contain trade secrets.  Wildflower does not oppose GTSI's motion to seal the attachments to the Basic Agreement, which contain pricing and product information.  It does oppose GTSI's motion to seal the Basic Agreement and the affidavit.

Both parties publicly filed their motions to seal.  The public has had ample opportunity to object to the motions, and the Court has received no objections; thus, the parties have met the first *Ashcraft* requirement.

Considering all the alternatives, including the "less drastic" alternative of sealing only the attachments that contain pricing information, the Court finds that at this early stage of the litigation it is appropriate to seal the entire exhibit GTSI submitted to the Court.  GTSI submitted its exhibit as a single package.  While it is possible that each of the component parts may not contain trade secrets or be strictly confidential, the exhibit, taken as a whole, contains sensitive pricing information that the Court is satisfied should not be publicly disclosed.  At this preliminary juncture, the Court finds it inappropriate to

---

[3] The parties submitted their motions to seal pursuant to Local Civil Rule 5(D), which governs documents provisionally filed under seal for which parties request a sealing order.

sub-divide the exhibit in order to undertake a separate confidentiality inquiry for each.

Additionally, the Court was not required to make, and has not made, a final decision on the confidentiality of the Basic Agreement.  If a different motion puts the secrecy of the Basic Agreement before the Court, and it rules as a matter of law that the document does not contain trade secrets and that it otherwise should not be subject to the heightened protection of sealing, the Court can then unseal the Basic Agreement. Likewise, if it later becomes appropriate to consider any component part of GTSI's submission separately, the Court can reconsider whether those component parts should remain under seal.

### IV.  Conclusion

For these reasons, the Court will deny Defendant Wildflower's motion to dismiss and grant both parties' motions to seal.

An appropriate Order will issue.


April 30, 2009                    _____/s/_____
Alexandria, Virginia                  James C. Cacheris
                          UNITED STATES DISTRICT COURT JUDGE